# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHNATHAN GREENBERG,      :
CHRISTOPHER GALE, ROBERT GIZA, and  :
MICHAEL TURRIZIANI       :
              :
              :  Civil Action
       Plaintiffs,   :
              :  No. 2:24-cv-02521
   v.          :
              :
JOHNSON CONTROLS, INC.,    :
              :
       Defendant.   :

## MEMORANDUM OPINION

**July 10, 2025**

## I.  INTRODUCTION

Before this Court is Defendant Johnson Controls Inc.'s (JCI) Motion to Transfer Venue to the U.S. District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404 (Dkt. 33) and Plaintiffs' Motion to Compel Deposition of Blake Lea Ewing (Ewing) and for Sanctions for Refusal to Produce Ewing Pursuant to Fed. R. Civ. P. 37(d)(1) (Dkt. 36). JCI's Motion highlights the fact that this matter is inextricably linked to overlapping litigation in several jurisdictions around the nation – revealing certain practical considerations impacting the efficiency and feasibility of further litigation here in the Eastern District of Pennsylvania. For the reasons set forth below, JCI's Motion is granted, and this action will be transferred

to the Eastern District of Wisconsin.  Relatedly, Plaintiffs' Motion to Compel and for Sanctions is denied.

## II.    BACKGROUND AND PROCEDURAL POSTURE

Prior to this matter being administratively relisted to the Undersigned, it was presided over by Judge John Milton Younge. The Honorable Judge Younge aptly summarized the facts of this case as it relates to the above-named parties as follows:

> This litigation, involving both company employees and management, stems from a disagreement over the commission payment structure utilized by Defendant [JCI] in the employment of Plaintiffs Jonathan Greenberg, Christopher Gale, Robert Giza, and Michael Turriziani.  Plaintiffs are HVAC Account Executives, who serve as commissioned salespersons of HVAC systems to commercial enterprises through JCI's Horsham, PA branch office.  Plaintiffs have been employed by JCI for 12 to 19 years and each has held their position during the pertinent period in question.

> Payment of commissions to Account Executives is governed by JCI's written incentive [compensation] plan, by which the Plaintiffs have received compensation during each year of their employment with JCI.  In this action, the specific incentive plan that is in dispute is entitled "Incentive Plan – HVAC Smart Building, Complex and Account Sales" (the "2023 Plan").  The 2023 Plan went into effect on October 1, 2022 and expired on September 30, 2023.  According to [Plaintiffs'] representation of the plan, for most sales, Account Executives are due commissions of 6% of the profits of each sale.  Of this commission, Plaintiffs were to be paid 20 to 25% of the total commissions at the time a sale is booked, while the balance of 75 to 80% percent of the commissions were to be paid to Plaintiffs over the duration of the project until the job transferred to warranty.  The Plaintiffs further allege that irrespective of whether booked jobs were completed during the time when the 2023 plan was in effect or in subsequent years thereafter, the incentive plan required that Plaintiffs be paid all remaining commissions owed one month after the completed jobs went to warranty.

> Plaintiffs allege they booked substantial sales during the period the 2023 plan was in effect and that JCI paid Plaintiffs 25% of their commission 30 days after each job was booked.  JCI also paid Plaintiffs their remaining commission for the booked jobs that went to warranty

2

during this period. At the conclusion of the period that the 2023 Plan was in effect, several of Plaintiffs' booked jobs were not completed to warranty, leaving balances of what Plaintiffs assert they are owed as commissions for said jobs that would later be completed to warranty. According to a spreadsheet provided to Plaintiffs by JCI that tracked their "Estimated Remaining Incentive," Plaintiffs were expecting the following commissions: $188,725 for Greenberg, $137,885 for Gale, $184,745 for Giza, and $206,260 for Turriziani.

After the 2023 Plan expired, JCI implemented a 2024 Incentive Plan (the "2024 Plan") in November 2023. The 2024 Plan contained a new commission payment structure for HVAC sales that differed from the 2023 Plan, including paying out commissions at the time the job is booked. In addition to implementing new terms for future jobs, the 2024 Plan also provided that JCI would not pay commissions from jobs that were booked under the 2023 Plan but not completed to warranty as of November 1, 2023. As such, Plaintiffs would not be paid the above-mentioned commission balances that they expected.

**Plaintiffs commenced this action against JCI on June 10, 2024**, alleging breach of contract (Count I), promissory estoppel (Count II), and unjust enrichment (Count III) claims, all of which they allege also amount to violations of the Pennsylvania Wage Payment and Collection Law ("WCPL").

*Greenberg v. Johnson Controls, Inc.*, No. 24-CV-2521-JMY, 2024 WL 4293056, at *1 – *2 (E.D. Pa. Sept. 25, 2024) (Younge, J.) (emphasis added) (record and docket citations omitted). Judge Younge dismissed Plaintiffs' promissory estoppel and unjust enrichment claims. Only the breach of contract claim remains. *See id.* at *4.

As suggested above, Plaintiffs here are not the only aggrieved employees suing JCI for its alleged failure to pay commissions consistent with the 2023 Plan. *See* Pls.' Resp. at 2, n.1 (Dkt. 34); Def's Br. in Support at 3-5 (Dkt. 33-1). Between January and March of 2024, at least six separate suits in several different jurisdictions allege the same or similar behavior on the part of JCI.

3

### a. Wisconsin Class Action

On January 12, 2024, six commissioned salespersons from Kansas and Missouri filed a class action complaint in the United States District Court for the Eastern District of Wisconsin, where JCI is headquartered and maintains its principal place of business. *See Novin et al. v. Johnson Controls, Inc.*, Case No. 2:24-cv-00046-PP. That complaint was later amended to include 22 complainants from 13 states.

The parties here seem to agree for the purposes of this litigation that *Novin* represents the "first-filed" action regarding JCI's alleged failure to abide by its incentive compensation plans. We will come back to Wisconsin momentarily.

### b. Michigan Litigation

Next, a Macomb County, Michigan, employee sued JCI in Michigan state court on January 18, 2024. JCI subsequently removed to the United States District Court for the Eastern District of Michigan, and that Court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1] *See Konczak v. Johnson Controls, Inc.*, No. 24-10431, 2025 WL 824130, at *1 (E.D. Mich. Mar. 14, 2025). Notice of appeal was filed on March 19, 2025, and is currently pending before the 6th Circuit.

---

[1]     Plaintiffs' counsel here (Sharp) is counsel of record in the *Konczak* action. Based on this Court's cursory review of the *Konczak* docket, that Court dismissed the complaint based on substantive Michigan state contract law. Separately, JCI asserts there are three similar cases pending in Michigan state court in which the complainants are all represented by Sharp. According to JCI, these cases lack a basis for federal jurisdiction (presumably amount in controversy) and have not been removed.

4

### c. New York Litigation

In February 2024, two complainants (Pagano and Halfter) filed separate actions against JCI in the United States District Court for the Southern District of New York.[2] *See Pagano v. Johnson Controls, Inc.*, No. 24-CV-01020, 2025 WL 786535, at *1 (S.D.N.Y. Mar. 12, 2025).

JCI filed motions to dismiss in each of the New York actions. Before ruling on the motions, the Honorable Margaret Garnett became aware of *Novin, supra*, "which purports to be a class action on behalf of **all** Johnson Controls employees subject to the incentive compensation plans." *Id.* (emphasis in original). Judge Garnett, *sua sponte*, directed the parties to file a joint statement on the impact of *Novin* on each action. In that statement JCI argued that the case should be transferred pursuant to the "first-filed" rule. *See id.* at Dkt. 27, p. 4. Conversely, New York plaintiffs asserted that the first-filed rule did not apply because they filed their claims on an individual basis and have effectively "opted out" of any class action proceedings before the Court in the Eastern District of Wisconsin. *See id* at p. 1.

Ultimately, Judge Garnett transferred all New York cases[3] brought against JCI to the Eastern District of Wisconsin. Finding that the first-filed rule applied, she observed that plaintiffs

> are certainly free to opt out of *Novin*, or to object to any consolidation proceedings once the cases are docketed in the Eastern District of Wisconsin, [but] they are not entitled to adjudicate simultaneous

---

[2]     Plaintiffs' counsel in this matter is counsel of record in both actions.

[3]     In March of 2024, a third complainant (Riccitelli) filed a putative class action complaint against JCI in New York state court, which JCI subsequently removed to the Southern District of New York. *See Riccitelli v. Johnson Controls, Inc.*, Case No. 1:24-cv-03243.

proceedings in [New York] where doing so would cause duplicative litigation and waste resources both for the parties and the Court.[4]

*Pagano*, 2025 WL 786535, at *3. In Judge Garnett's view, the balance of convenience weighed in favor of transfer to the Eastern District of Wisconsin.[5] Judge Garnett did not pass on JCI's motion to dismiss.

### d. Colorado Litigation

On March 20, 2024, an individual plaintiff sued JCI in Colorado state court asserting substantially similar claims as those alleged in the present action. JCI removed to the United States District Court for the District of Colorado and filed a motion to dismiss. The Honorable Regina Rodriguez granted in part and denied in part JCI's motion to dismiss and later granted plaintiff leave to amend the complaint. *Goodwin v. Johnson Controls, Inc.*, No. 24-CV-00989, 2025 WL 925848, at *5 (D. Colo. Mar. 27, 2025). After plaintiff filed their amended complaint, JCI moved to transfer venue to the Eastern District of Wisconsin and plaintiff replied. *See id.* at Dkt. 33, 35, 38. As of the date of this Opinion and Order, the District of Colorado has yet to rule on JCI's motion to Transfer Venue.

---

[4]     Riccitelli made slightly different arguments in the joint statement, but the Court found that no special circumstances existed which would preclude application of the First-Filed rule. *See Pagano*, 2025 WL 786535, at *3

[5]     Judge Garnett also observed that in the 2nd Circuit "[t]he factors relevant to the balance of convenience analysis [regarding the first-filed rule] are essentially the same as those considered in connection with motions to transfer venue pursuant to [Section 1404(a)]. *Pagano*, 2025 WL 786535, at *2.

### e. Eastern District of Wisconsin's receipt of the New York Litigation

Back to Wisconsin – the three cases consisting of the New York Litigation described above were received in its Eastern District on March 20, 2025. The opinion and order transferring the cases from the Southern District of New York to the Eastern District of Wisconsin indicated that all three were related to each other, and related to the class action, *Novin*, *supra*. Accordingly, all three cases were assigned to Chief Judge Pamela Pepper who is also presiding over *Novin*. *See Pagano v. Johnson Controls, Inc.*, Case No. 2:25-cv-00423-PP; *Novin et al. v. Johnson Controls, Inc.*, Case No. 2:24-cv-00046-PP.

Upon assignment to Chief Judge Pepper, the Court issued a scheduling order pursuant to Fed. R. Civ. P. 26(f). The two New York plaintiffs represented by counsel of record in this matter (Sharp) timely complied with Chief Judge Pepper's order. In their 26(f) report, they reasserted their position that Wisconsin is an inappropriate venue and that class implications in *Novin* should not impact their cases as they would not be part of the class. *See Pagano v. Johnson Controls, Inc.*, Case No. 2:24-cv-00423-PP at Dkt. 33, p. 3-4.

JCI did not file a 26(f) report. Instead, JCI filed a last-minute motion asking the Court to stay any scheduling and discovery until the Court ruled on the outstanding motions to dismiss that were filed and briefed in New York. *See id*. at Dkt. 37. JCI's motion also observed that *Novin*, the class action matter, has a hearing set for August 7, 2025, relative to JCI's motion to dismiss at that docket. *See Novin et al v. Johnson Controls, Inc.*, Case No. 2:24-cv-00423-PP at Dkt. 24.

7

In Plaintiffs' Response in Opposition to JCI's Motion to Stay, Plaintiffs concede that JCI's 12(b)(6) motion in the New York Litigation was fully briefed and ripe for decision prior to the transfer. However, Plaintiffs' counsel referenced its involvement in "a similar matter [where] discovery proceeded before the Court had denied JCI's 12(b)(6) motion and the District Court denied JCI's motion to stay [discovery]."[6] *Id.* at Dkt. 36. As such, plaintiffs' argued that discovery should not be stayed, notwithstanding the docket in *Novin* or the ripe motion in *Pagano*

In a May 19, 2025, long form Order, Chief Judge Pepper exercised the Court's "extremely broad discretion in controlling discovery[]" and granted JCI's motion to stay, pending its ruling in *Novin*. *See Pagano v. Johnson Controls, Inc.*, Case No. 2:25-cv-00423-PP at Dkt 37, p. 7-8. The Court denied, without prejudice, JCI's motions to dismiss as to the New York Litigation. Chief Judge Pepper explained that "[d]oing so will avoid the possibility of unnecessary and wasteful discovery and will allow the parties to tailor their discovery to any rulings the court makes on the motion to dismiss in *Novin*." *Id* at 8. Chief Judge Pepper added that "[t]here is no sense in allowing discovery to move forward in three of four cases when the motions to dismiss in all four cases raise similar legal issues. *Id.*

### f. Pennsylvania Litigation

Against this backdrop, two motions are pending before this Court: JCI's Motion to Transfer Pursuant to Section 1404(a), and Plaintiffs' Motion to Compel Deposition

---

[6]     It is not clear if counsel is referencing the matter before this Court. However, the Honorable Judge Younge and the Undersigned have issued several scheduling orders both before and since the order and opinion disposing of JCI's motion to dismiss.

of Blake Ewing (Ewing) and for Sanctions for Refusal to Produce her Pursuant to Fed. R. Civ. P. 37(d)(1). *See* Dkt. 33, 36. On January 24, 2025, the Undersigned issued an Amended Scheduling Order directing the parties to complete all factual discovery no later than July 25, 2025. Correspondence between the parties indicates that they were in discussions regarding a timeline to depose Ewing, Senior Director of Global Incentives at JCI. *See* Pls.' Mot. to Compel, at Ex. 2. Based on these communications it was Plaintiffs' intent to depose Ewing on May 2, 2025. This was communicated to JCI *via* email on March 5, 2025.

On March 6, JCI indicated in its response that certain representations made by Judge Garnett in the Southern District of New York may impact their position on moving forward in this case here in the Eastern District of Pennsylvania. On March 14, just days after Judge Garnett issued her transfer Order, JCI informed Plaintiffs' counsel that it intended to seek a transfer in this matter under a similar legal theory. JCI inquired whether plaintiffs would consent to transfer to avoid motion practice. *See* Def's Opp'n at Ex. A (Dkt. 38). On March 17, Plaintiffs' counsel indicated that she did not consent to transfer and requested a call to address the scheduled depositions. *Id.* JCI responded the next day regarding times for a telephone conference and indicated that they no longer intended to depose plaintiffs. It appears from the record that no further discussions were had regarding Ewing's deposition.

On April 14, JCI filed its Motion to transfer venue. Plaintiffs responded and JCI was granted leave to file a reply. On April 29, Plaintiffs filed their Motion to compel. JCI has responded. Both motions are now ripe for decision.

### III. LEGAL STANDARD

JCI asserts that the Eastern District of Wisconsin will be more convenient for the parties and the witnesses – stating that all but one of the *Jumara* factors weigh in favor of transfer. *See* Def.'s Mot. at 8-9. JCI further argues that a transfer under Section 1404(a) will be in the interest of justice. *Id.* at 10.

In response, Plaintiffs contend that JCI has waived its right to challenge improper venue in this matter, that venue is proper in Pennsylvania, and that the *Jumara* factors weigh in favor of the Eastern District of Pennsylvania.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought[.]" 28 U.S.C. § 1404(a). "[The statute] provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer ... [thus] calls on the district court to weigh in the balance a number of case-specific factors[.]" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In ruling on a Section 1404(a) motion, district courts are cautioned that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d 879.

"In evaluating whether a transfer is appropriate, courts are not limited to the factors itemized in Section 1404(a). Instead, courts should consider all relevant factors to determine whether, on balance, justice and convenience would be better

10

served after a transfer to a different forum." *Seidman v. Hamilton Beach Brands, Inc.*, No. 2:24-CV-06033, 2025 WL 880028, at *3 (E.D. Pa. Mar. 21, 2025) (Weilheimer, J.) (internal citations omitted). The panel in *Jumara* articulated several private and public factors that district courts should apply when analyzing a Section 1404(a) transfer motion. The private factors are:

> [1] Plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claims arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

*Jumara*, 55 F.3d at 879. The public factors are:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-880. Defendants seeking a transfer bear the burden of establishing that the above factors counsel in favor of transfer. Courts also retain authority to transfer cases under Section 1404 *sua sponte*. *See Seidman*, 2025 WL 880028, at *3 (citations omitted).

But first – a motion for transfer under Section 1404(a) begs a threshold question: whether the suit could have been brought originally in the forum sought by the moving party. Here, neither party contests the that this action could have been brought in the United States District Court for the District of Wisconsin. JCI is a

Wisconsin company with its principal place of business in Glendale, Wisconsin. As such, the requested venue is a proper forum for this litigation. *See Jumara*, 55 F.3d at 878.

Separately, the first-filed rule empowers district courts to either stay, dismiss, or transfer proceedings where the subject matter substantially overlaps with that of an earlier filed case in a different district.[7] *See Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971-972 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990); *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 424-425 (E.D. Pa. 2019) (Diamond, J.). The rule creates a rebuttable presumption that the action filed earlier in time should go forward, and the action filed later in time should defer. 15 CHARLES A. WRIGHT, *et al.* § 3854 at n.12 (4th ed.). Courts may decline to follow the first filed rule where a party demonstrates extraordinary circumstances, inequitable conduct, bad faith, or forum shopping on behalf of another litigant. *See Univ. of Pennsylvania*, 850 F.2d at 972.

## IV. DISCUSSION

As an initial matter, Plaintiffs' contention that JCI has waived the opportunity to move for a change of venue under Section 1404(a) because it did not assert improper venue as a pre-answer defense misapprehends the statute's purpose. *See* Pls.' Resp. at 3. The text of Section 1404(a) contains no temporal language, and the

---

[7]     While JCI does not discretely move for a transfer pursuant to the first-filed rule, it goes out of its way to cite the New York Litigation and subsequent transfer by Judge Garnett as an indication that this Court should take a similar tack. See Def.'s Br. in Support at 4, 9.

Third Circuit has held that there are no time constraints associated with motions for a transfer of venue under the statute. *See Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981). In this way, a party's opportunity to move for transfer under Section 1404(a) is indefeasible.

Plaintiffs are correct that JCI has waived the ability to challenge the Eastern District as an *improper* venue under Fed. R. Civ. P. 12(b)(3). *See* Fed. R. Civ. P. 12(h). But this is not the substance of JCI's motion. JCI accepts, as it must for the purposes of its motion, that venue in the Eastern District of Pennsylvania is properly laid pursuant to 28 U.S.C. § 1391. *See* Def.'s Reply Br. at 2-3 (Dkt. 39).[8] According to JCI, the impetus for its motion is not that venue is improper in the Eastern District of Pennsylvania, but that convenience of the parties and witnesses, and the interest of justice, counsel in favor of a transfer to the Eastern District of Wisconsin. *Id.* at 3. This argument is distinct from the defense of improper venue under Fed. R. Civ. P. 12(b)(3). Recognizing this distinction, it is axiomatic that a named party's ability to move for change of venue under Section 1404(a) is unwaivable. *See* 15 CHARLES A. WRIGHT, *et al.* § 3844 (4th ed.).

### a. Private *Jumara* factors

Here, JCI concedes that Plaintiffs' initial choice of Pennsylvania weighs against transfer. *See* Def.'s Br. in Support at 9. However, JCI asserts that the weight afforded Plaintiffs' choice of forum here is weakened in that the central facts of their

---

[8]    The Court granted leave for JCI to file a reply in further support of its motion to transfer venue. That filing is unpaginated. Accordingly, for the purposes of this filing only, the Court adopts the pagination adopted by the ECF docketing system.

13

remaining claim took place in Wisconsin. *Id.* JCI further argues that all the other factors counsel in favor of transfer. *Id.* at 8.

In reviewing the whether the claim arose elsewhere, the Court agrees with JCI that this factor weighs in favor of transfer. Plaintiffs' remaining claim sounds in breach of contract. Specifically, the Plaintiffs here allege that upon JCI's implementation of the 2024 incentive compensation plan, it refused to pay Plaintiffs their earned commissions under the 2023 Plan. *See* Pls.' Compl., at 8 (Dkt. 1). These plans are undoubtably contracts between employees and their employer.

Under 28 U.S.C. § 1391(b)(2), venue is proper in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred. "In an action sounding in contract, the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and **where the alleged breach occurred**." *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 438 (D.N.J. 2015) (cleaned up; emphasis added). Further, where a party to a contract is being sued for non-payment, "the locus of the action is where the party failed to take that action rather than where the result is felt." *McNulty v. J.J. Miles and Co., Inc.*, 913 F. Supp. 2d 112, 119 (D.N.J. 2012); *see also Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 295 (3d Cir. 1994) (holding that breach occurred in Michigan even though claimants non-receipt of payments was felt in Pennsylvania).

JCI has branch offices all around the country, including one in Horsham here in the Eastern District of Pennsylvania. But its nerve center is in Wisconsin. Based

14

on the pleadings, this Court concludes that decisions regarding changes in the incentive compensation structure occurred at JCI's headquarters in Wisconsin. Stated differently, the claims underlying Plaintiffs' suit occurred elsewhere, outside of their chosen forum. This is evidenced by similar litigation brought by aggrieved employees all over the country. That each individual branch office made the same changes to the compensation structure, in the same fiscal year, independent of any sort of centralized decision making, is highly unlikely.

Plaintiffs' choice of forum is substantially weakened by the fact that the situs of the alleged breach is Wisconsin. *See Seidman*, 2025 WL 880028, at *5 (giving less weight to plaintiffs' choice of forum where none of the operative facts occurred in the transferor forum). Accordingly, the first three private factors collectively – Plaintiffs' initial choice of forum, Defendant's preference, and whether the claims arose elsewhere – do not support maintaining this action in the Eastern District of Pennsylvania.

The fourth and fifth private *Jumara* factors relate to the convenience of the parties and the witnesses. With respect to the convenience of the parties as indicated by their relative physical and financial condition, it is presumed that Plaintiffs' resources are limited compared to JCI's. This relative inconvenience generally weighs against transfer.[9] *See Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 338 (D.N.J. 2003).

---

[9]     JCI has indicated that it is not likely to depose Plaintiffs. To the extent further discovery dictates that JCI must depose Plaintiffs, JCI has represented to the Court that it will conduct depositions in the Philadelphia metro area or *via* video conference. *See* Def.'s Br. in Support at 10, n.12.

Additionally, the Undersigned has difficulty accepting JCI's argument that if the case remains in the Eastern District of Pennsylvania, "key former employee witnesses" could not be compelled to testify, in light of the geographical restrictions contained in Fed. R. Civ. P. 45(c)(1)(A). *See* Def.'s Br. in Support at 8-9. This argument is speculative. These "possible … **former** employees" are not specifically identified in the briefing to date. Def.'s Br. in Support at 8-9 (emphasis added). The only employee witness who has been identified by name is JCI's current Senior Director of Global Incentives, Ewing. It is generally presumed that a corporate party can "procure the attendance of its own [current] employees for trial." *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 199 (E.D. Pa. 2008). Surely JCI would be able to produce Ewing in Philadelphia if Plaintiffs' suit were to continue here.[10]

The sixth private factor, the location of books and records, is similarly limited to the extent that certain files cannot be reproduced in the alternative fora. "Technological advances since the Third Circuit's decision in *Jumara* have rendered this factor all but obsolete." *Seidman*, 2025 WL 880028, at *9. JCI cannot seriously argue that it would be unable to produce files and business records here in the Eastern District of Pennsylvania, where it maintains a branch office in Horsham, Pennsylvania. Although this Court views the convenience analysis with more nuance

---

[10]     The Court agrees with JCI that the locus of operative facts is Wisconsin because that is where certain corporate decisions to change the incentive structure allegedly occurred. However, if these are truly executive decisions, as JCI maintains, then evidence could likely be introduced *via* business records through a corporate officer in the event a former employee was not subject to compulsory process in Philadelphia. *See* Def.'s Br. in Support at 8 ("all decisions (or lack thereof) made regarding whether to make certain payments … were made by JCI's executives" in Milwaukee.).

than JCI, additional circumstances shed light on the overall interest of justice in this matter.

### b. Public *Jumara* factors

The first three public factors tip the scales in favor of JCI's requested transfer. This case presents no legitimate judgment enforcement issues. However certain practical considerations, combined with the relative administrative difficulty of the two fora, weigh heavily in favor of transfer to the Eastern District of Wisconsin.

Chief among these practical considerations is that the first suit filed against JCI relating to the subject matter at issue in this suit was filed in the Eastern District of Wisconsin. This Court recognizes the first-filed rule has developed as its own distinct legal doctrine – separate from Section 1404(a) and the Third Circuit's *Jumara* factors. *Cf. Phoenix Ins. Co. Ltd.*, 381 F. Supp. 3d at 424-425 (granting motion for transfer pursuant to first-filed rule *or* in the alternative ordering transfer under Section 1404(a)). This Court further recognizes that JCI did not explicitly ask for a transfer under the first-filed rule. However, this Court sees the first-filed rule as linked with the public *Jumara* factors in a way that warrants their combined consideration. *Cf. Pagano,* 2025 WL 786535, at *2 (observing that the 2nd Circuit factors relevant to the balance of convenience analysis regarding the first-filed rule are essentially the same as those considered in connection with section 1404(a) transfer motions).

Here, the Wisconsin class action involves several plaintiffs hailing from multiple states. Further, the Honorable Chief Judge Pepper has already taken

administrative steps to organize the suits against JCI and field related litigation transferred to Wisconsin from other districts. Not only is the Wisconsin class action the first-filed suit, but subsequent cases have already been transferred there in furtherance of efficiency and consolidation.[11] *See e.g. Pagano*, 2025 WL 786535. Stated differently, the track has already been laid in Wisconsin to adjudicate claims challenging JCI's compensation practices. While this does not relate to "congestion" in the way typically contemplated by the *Jumara*, it informs the Court's first-filed analysis and buttresses the administrative efficiency contemplated by the second and third public *Jumara* factors.

Alternatively, were this Court to rule in favor of Plaintiffs and against transfer, it would create a situation in which multiple cases involving precisely the same issues are simultaneously pending in different district courts, leading to the waste of time, energy, and money that Section 1404(a) was designed to prevent. *See Phoenix Ins. Co. Ltd.*, 381 F. Supp. 3d at 424 (discussing the public interests factors under Section 1404(a)). However, transfer and consolidation of this matter accords with "sound judicial administration and promotes comity among federal courts of equal rank." *Univ. of Pennsylvania*, 850 F.2d at 971 (discussing the reasoning behind the first-filed rule). Thus, judicial economy cuts only one way in this matter, and that is in favor of transfer to the Eastern District of Wisconsin.

---

[11] There is a dearth of law regarding the impact an initial transfer pursuant to the first-filed rule may have on other district courts that have yet to address transfer motions in related actions. However, it stands to reason that the concentration created by an initial transfer under the rule would only strengthen the rule's subsequent application in other districts.

18

Plaintiff suggests in passing that seeking transfer roughly "a year after the matter was filed, while the parties are in the midst of discovery and weeks before the deposition of the **only corporate representative Defendant identified** smacks of gamesmanship." Pls.' Resp. at 4-5 (emphasis in original). While it is true "gamesmanship" or inequitable conduct might weigh against a transfer under the first-filed rule, this Court does not share Plaintiffs' concerns in light of the entire record.

It appears that JCI was apprised of its options under the first-filed rule after Judge Garnett in the Southern District of New York asked for briefing on the issue. JCI communicated to Plaintiffs that it intended to request the transfer in this matter following Judge Garnett's ruling. Pls.' Resp. at Ex D; Def's Opp'n at Ex. A. Plaintiffs' frustration in understandable. However, JCI's strategical pivot is not the sort of bad faith that would tend to soil the profession.

It bears repeating that JCI's motion for transfer came *after* Judge Garnett's astute observation that overlapping litigation was already underway in the Eastern District of Wisconsin. *See Pagano*, 2025 WL 786535, at *1. Thus, the motivation for JCI's decision to move for a transfer in this matter can be objectively attributed to Judge Garnett's *sua sponte* request for briefing and subsequent order transferring under the first-filed rule. *See id.* at *3. Plaintiffs have failed to point to any bad faith, inequitable conduct, forum shopping, or other extreme circumstances that outweigh the judicial economy uncovered by Judge Garnett.

The additional *Jumara* public interest factors shed little light on the interest of justice analysis. While not directly asserted by Plaintiffs, an argument could be made that there is a public interest in deciding local controversies here in Pennsylvania. *See Seidman*, 2025 WL 880028, at *9-*10. However, the national nature of this dispute, made clear by concurrent nationwide litigation alleging JCI's failure to properly pay its employees, outweighs the local interest in deciding the case.

In sum, the overall assessment of the public *Jumara* factors and supplemental considerations regarding the first-filed rule, combined with the fact that the operative facts or decisions underlying Plaintiffs' claims occurred in Wisconsin, all compel this Court to conclude that transfer to the Eastern District of Wisconsin is appropriate here. Accordingly, JCI's motion to transfer is granted.

### c. Plaintiffs' Motion to Compel Deposition and for Sanctions

Plaintiffs' Motion to Compel the Deposition of Ewing and for Sanctions under Fed. R. Civ. P. 37(d)(1) is denied. Between March and May of 2025, the parties were in back-and-forth discussions regarding discovery logistics and scheduling of depositions. It appears, based on email correspondence between counsel, that the parties had tentatively agreed to Ewing's deposition on May 2, 2025. JCI made clear that its position on the deposition of Ewing may change depending on Judge Garnett's venue determination. In fact, Plaintiffs' counsel acknowledged this argument in a March 9, 2025, email to JCI's counsel. *See* Pls.' Mot. to Compel at Ex. 4.

Once Judge Garnett transferred the New York litigation to the Eastern District of Wisconsin, JCI filed its motion to transfer venue under Section 1404(a).

This course of action was consistent with JCI's prior representations to Plaintiffs regarding its litigation strategy. Thus, this Court is constrained to agree with JCI that it did not fail to cooperate in the discovery process and was reasonably justified in its action. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Additionally, it makes little sense at this juncture to compel JCI to produce Ewing for a deposition. In fact, granting Plaintiffs' Motion would work against the judicial economy rationale undergirding Judge Garnett's transfer of the New York Litigation to the Eastern District of Wisconsin and Chief Judge Pepper's consolidation of the JCI matters in Wisconsin. This Court is unwilling to impede the efforts towards efficiency recognized by other district courts of equal rank.

## V.    CONCLUSION

For the above reasons, JCI's Motion to Transfer pursuant to Section 1404(a) is granted. The Court also believes that there is an alternative, independent basis to transfer under the first-filed rule. Finally, Plaintiffs' Motion to Compel and Motion for Sanctions is denied.

BY THE COURT:

_____
GAIL A. WEILHEIMER,  J.